UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES JACKSON, SR.,<br><br>Plaintiff,<br><br>v.<br><br>THE GUARDIAN LIFE INSURANCE COMPANY OF AMERICA, et al.,<br><br>Defendants. | Case No. 22-cv-03142-JSC<br><br>**ORDER RE: MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 27 |

Charles Jackson, Sr. brings this lawsuit against The Guardian Life Insurance Company of America and his employer, Pacific States Petroleum under the Employee Retirement Income Security Act ("ERISA"). 29 U.S.C. §§ 1132(a)(1)(B), (a)(3)(B). Defendants move for summary judgment based on Plaintiff's failure—in their view—to exhaust administrative remedies under Pacific States' employee benefit plan prior to filing suit. (Dkt. No. 27.)[1]

After carefully reviewing the parties' briefs and conducting oral arguments on April 13, 2023, Defendants' motion is DENIED. If a plan "clearly and unambiguously" requires pre-suit exhaustion, a plaintiff *must* satisfy the plan's requirements prior to filing suit *without exception*. *Wit v. United Behavioral Health*, 58 F.4th 1080, 1098 (9th Cir. 2023). But "a claimant need not exhaust when the plan does not require it." *Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282, 1299 (9th Cir. 2014). Here, the Pacific States plan does not *require* exhaustion of administrative remedies. (Dkt. No. 27-1 at 522-524); *see also Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 628 (9th Cir. 2008) (courts interpret ERISA plans "as would a person of average intelligence and experience"). So, Plaintiff had no obligation to do so. *Spinedex*, 770 F.3d at 1299.

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

# DISCUSSION

Plaintiff began working as a tanker truck driver for Pacific States Petroleum in 2012. Guardian administers Pacific States' employee benefit plan. In January 2020, Plaintiff submitted a form electing coverage under Pacific States' long-term disability plan. (Dkt. No. 29-5 at 4.) Around the same time, he began experiencing elbow and shoulder pain. (Dkt. No. 29-4 ¶ 7.) He transitioned to modified office duties to avoid further injury. (*Id.*) A few months later, Plaintiff submitted a second coverage form, electing both short and long-term disability coverage. (Dkt. No. 29-6 at 5.) Pacific States then sent Plaintiff the following notice:




To: Charles Jackson
From: Kelli Collins

Re: Benefits Deductions

Based on the benefits you have chosen for you and your family, starting May 20th, 2020 your benefits premium will be the following:

| Benefit | Coverage | Cost Per Month | Deduction Per Paycheck |
|---|---|---|---|
| Kaiser Medical | HMO 9980 | $0.00 | $0.00 |
| Guardian Dental | Base | $36.98 | $18.49 |
| Guardian Vision | Yes | $7.55 | $3.78 |
| Accident Plan | Yes | $13.92 | $6.96 |
| Short-Term Disability | Yes | $8.25 | $4.13 |
| Long-Term Disability | Yes | $68.16 | $34.08 |
| Supplemental Life | Yes | $5.60 | $2.80 |
| FSA Election | $0 | $0.00 | $0.00 |
| **TOTALS** | | **$140.46** | **$70.23** |

If you have any questions, please contact Kelli Collins or Garrett Rizzonelli.

Kelli Collins
Director of Human Resources
800-679-1700

(Dkt. No. 29-7 at 2.) Pacific States sent Plaintiff identical notices—again stating Plaintiff had Long-Term Disability Coverage and $34.08 in premiums would be deducted per paycheck—in both December 2021 and October 2022. (*Id.* at 3, 5.) Shortly after the first notice from Pacific States, Plaintiff took paid short-term disability leave. (Dkt. No. 29 ¶ 12.) Once cleared to return to work, he did so. (*Id.* ¶ 13.) But, in January 2021, Plaintiff obtained elbow surgery and again went on short-term leave. (*Id.*)

Because his short-term leave was set to expire in April 2021, Plaintiff inquired about the process to obtain his long-term disability benefits. (*Id.* ¶ 14.) In response, Guardian told Plaintiff he had not applied for long-term benefits because Plaintiff never submitted an "evidence of insurability" form. (*Id.*) Plaintiff believed he had been accepted for coverage and had been paying for long-term coverage since May 2020. (*Id.*) Plaintiff submitted another form, again selecting long-term coverage. (Dkt. No. 29-8 at 5.) He also provided an evidence of insurability form, (*id.* at 7), and confirmed coverage premiums had been deducted from his paycheck, (Dkt. No. 29-9 at 2.)

Guardian declined to provide coverage based on Plaintiff's "history of musculoskeletal disorder" and the "medical history on [Plaintiff's] application." (Dkt. No. 27-1 at 638, 642.) Plaintiff requested Guardian waive the "evidence of insurability" requirement because—he wrote—he had no health issues when he started paying for long-term coverage in 2020. (Dkt. No. 29-11 at 3.) Guardian declined to waive the requirement. (*Id.*)

In December 2021, after receiving another notice from Pacific States that he had long-term disability coverage, Plaintiff's counsel requested a claim file from Guardian. (Dkt. No. 29-1 ¶ 2.) A few months later, Guardian sent a letter to Plaintiff's counsel stating "On 1/25/2022 your claim was set up to review for Long Term Disability benefits. According to our records, you are not insured for Group Long Term Disability coverage with Guardian as your application was denied due to your medical history." (Dkt. No. 27-1 at 645.) The notice included a section titled "Your Appeal Rights" with attached instructions as to how to appeal an adverse decision. (*Id.* at 645-651.) Plaintiff's attorneys assert they never received that letter. (Dkt. No. 29 at 11.) Plaintiff then sued for wrongful claim denial, or in the alternative, for breach of fiduciary duty. (Dkt. No. 1.)

3

# DISCUSSION

Defendants move for summary judgment on one ground: Plaintiff's failure to exhaust administrative remedies under the plan prior to filing suit. But, even if the Court assumes Plaintiff failed to exhaust administrative remedies under the plan,[2] Defendants' motion fails. Because the plan does not *require* administrative remedies exhaustion, Plaintiff's failure to exhaust does not doom his claim. *Spinedex*, 770 F.3d at 1299.

## I. Exhaustion

"ERISA itself does not require a participant or beneficiary to exhaust administrative remedies in order to bring an action under § 502 of ERISA, 29 U.S.C. § 1132." *Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1088 (9th Cir. 2012) (quoting *Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008)). "Instead, ERISA mandates an opportunity for administrative review, *see* 29 U.S.C. § 1133(2), and [the Ninth Circuit has] treated completion of this administrative review as a prudential exhaustion requirement." *Wit v. United Behav. Health*, 58 F.4th 1080, 1097–98 (9th Cir. 2023) (citing *Castillo v. Metro. Life Ins. Co.*, 970 F.3d 1224, 1228 (9th Cir. 2020)).

But, under binding precedent, ERISA exhaustion is ultimately a question of contract. If a plan makes exhaustion optional, exhaustion is optional. *Spinedex*, 770 F.3d at 1299. If a plan makes exhaustion mandatory, exhaustion is mandatory. *Wit*, 58 F.4th at 1098. No judge-made exceptions excuse non-compliance. *Id.*

### A. Prudential Exhaustion

#### 1. *Amato v. Bernard*

The Ninth Circuit first announced the "prudential exhaustion" doctrine in *Amato v. Bernard*, 618 F.2d 559, 566 (9th Cir. 1980). *Amato*'s holding rests largely on legislative history.

---

[2] The parties dispute, to some extent, whether Plaintiff did attempt to exhaust his administrative remedies. (Dkt. No. 29 at 12 n.2; Dkt. No. 30 at 8.) Plaintiff describes the entire saga listed above as his attempt to appeal Guardian's denial and evidence further efforts would be futile. (Dkt. No. 29 at 12 n.2.) Defendants characterize Plaintiff's initial communications with Guardian and Pacific States—in April and May 2020—as coverage denials during "open enrollment." (Dkt. No. 30 at 8.) Defendants argue Guardian denied a claim only once, in February 2022. (*Id.* at 9.) As discussed below, the Court need not resolve whether Plaintiff's futility argument is valid.

4

For example, ERISA's legislative history linked ERISA to the Labor Management Relations Act. *Id*. at 567. Because the LMRA requires administrative exhaustion, the Court found the legislative history "clearly suggests that Congress intended to grant authority to the courts to apply the exhaustion requirement in suits arising under [ERISA]." *Id*. But the *Amato* court also made arguments from ERISA itself. While ERISA's text does not require exhaustion, it does require plans to offer administrative remedies and empowers the Secretary of Labor to regulate administrative review. *Id.* According to the panel, "it would certainly be anomalous if the same good reasons that presumably led Congress and the Secretary to require covered plans to provide administrative remedies for aggrieved claimants did not lead the courts to see that those remedies are regularly used." *Id.* at 567. Finally, the Court recognized a practical benefit of exhaustion because "fully considered actions" might "assist the courts when they are called upon to resolve controversy. *Id.* at 568. So—based on the legislative history, the text, and the policies underlying the text—the Ninth Circuit held "that the federal courts have the authority to enforce the exhaustion requirement in suits under ERISA, and that as a matter of sound policy they should usually do so." *Id.* at 568.

### 2. The Exceptions

From its inception, however, prudential exhaustion was a matter of discretion—not a bright-line rule. Indeed, *Amato* announced both the exhaustion requirement and its exceptions. Futility, inadequate remedies, and unreasonable claims procedures each excuse exhaustion. *Amato*, 618 F.2d at 568; *Vaught*, 546 F.3d at 626–27. Futility applies only where administrative review is "demonstrably doomed to fail." *Diaz v. United Agr. Emp. Welfare Ben. Plan & Tr.*, 50 F.3d 1478, 1485 (9th Cir. 1995). The "inadequate remedy" exception describes situations where internal review procedures are inadequate to provide a meaningful remedy or unbiased process. *Amato*, 618 F.2d at 568; *Diaz*, 50 F.3d at 1484. Similarly, the "unreasonable claims procedures" exception stems from ERISA's regulations, which state "a claimant shall be deemed to have exhausted the administrative remedies under the plan" if the plan does not follow "reasonable" claims procedures. *Id. Vaught*, 546 F.3d at 627 (quoting 29 C.F.R. § 2560.503–1(l)).

Given these exceptions, exhaustion is not jurisdictional. *Vaught*, 546 F.3d at 626 n.2.

1  Rather, when an exception applies, "a court is obliged to exercise its jurisdiction and is guilty of
2  abuse of discretion if it does not[.]" *Amato*, 618 F.2d 568.

### B.   Contractual Exhaustion

Two precedential decisions limit the applicability of judge-made "prudential exhaustion." Under *Spinedex Physical Therapy USA Inc. v. United Healthcare of Arizona, Inc.*, 770 F.3d 1282, 1299 (9th Cir. 2014) and *Wit v. United Behavioral Health*, 58 F.4th 1080, 1098 (9th Cir. 2023), the plan terms control exhaustion.

#### 1.   *Spinedex Physical Therapy USA v. United Healthcare of Arizona*

In *Spinedex Physical Therapy USA v. United Healthcare of Arizona*, the plaintiffs argued the ERISA plans did not expressly require exhaustion and so their claims should not be barred for failure to exhaust. 770 F.3d at 1298. The court agreed:

> A number of our sister circuits have held that a claimant need not exhaust when the plan does not require it. [citations omitted].[3] We arguably adopted the same rule in *Nelson v. EG & G Energy Measurements Group, Inc.,* 37 F.3d 1384 (9th Cir. 1994), and **we do so explicitly today**. In *Nelson,* we rejected a defendant's contention "that the plaintiffs were required to bring their valuation claims before the Administrative Committee prior to seeking relief from the courts," observing that "[n]othing in the Plan requires such action prior to instituting suit." *Id.* at 1388.

*Spinedex*, 770 F.3d at 1298-99 (emphasis added) (cleaned up). So, under binding Ninth Circuit precedent, "a claimant need not exhaust when the plan does not require it." *Id.* at 1299.

Defendants' attempt to limit *Spinedex* to when an ERISA plaintiff subjectively believes exhaustion is optional is unpersuasive. *Spinedex* did note a plan's language might mislead claimants to believe exhaustion is not a prerequisite to filing suit:

> ERISA seeks to avoid saddling plaintiffs . . . with the burdens and procedural delays imposed by inartfully drafted plan terms. Where plan documents could be fairly read as suggesting that exhaustion is not a mandatory prerequisite to bringing suit, claimants may be affirmatively misled by language that appears to make the exhaustion

---

[3] *Spinedex* quotes two out-of-circuit opinions during this portion of the opinion: *Kirkendall v. Halliburton, Inc.*, 707 F.3d 173 (2d Cir. 2013) and *Watts v. BellSouth Telecomms., Inc.*, 316 F.3d 1203 (11th Cir. 2003). These cases describe the relevant test in subjective terms—*i.e.*, the question is whether the claimant "reasonably interprets" exhaustion as optional. *Id.* But, as discussed in detail below, *Spinedex* creates an objective standard that "a claimant need not exhaust when the plan does not require it." *Spinedex*, 770 F.3d at 1298 (emphasis added).

> requirement permissive when in fact it is mandatory as a matter of law.
>
> [E]xempting from the general exhaustion requirement those plan participants who "reasonably interpret" their ERISA plan not to impose an exhaustion requirement will have the salutary effect of encouraging employers and plan administrators to clarify their plan terms and, thereby, of leading more employees to pursue their benefits claims through their plan's claims procedure in the first instance."

770 F.3d at 1298-99 (cleaned up). But the court did not hold that only those plaintiffs affirmatively misled are not required to exhaust; instead, it "explicitly" held that "a claimant need not exhaust when the plan does not require it." *Spinedex*, 770 F.3d at 1298. Consistent with that holding, the Ninth Circuit remanded the case to the district court to determine whether:

> (1) the plan required exhaustion of administrative remedies; (2) the claim must be deemed exhausted due to United's noncompliance with the claims procedures; and (3) the claim was in fact exhausted.

*Id*. at 1299. It did not remand to determine whether the plaintiffs subjectively believed they were not required to exhaust. Indeed, such an inquiry would do what ERISA seeks to avoid: saddle plaintiffs "with the burdens and procedural delays imposed by inartfully drafted plan terms." *Id.* at 1298 (quoting *Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 181 (2d Cir. 2013)). Does the court hold a trial to determine if the plaintiff was actually misled? Is the plaintiff barred from claiming he was misled merely because he was represented by counsel, as Defendants claim here? Do Defendants conduct discovery on the question? A test grounded in the plan's objective terms, rather than these subjective questions, better serves the practical goal of encouraging "employers and plan administrators to clarify their plan terms and, thereby, of leading more employees to pursue their benefits claims through their plan's claims procedure in the first instance." *See Watts*, 316 F.3d at 1209–10.

Other district courts considering *Spinedex* have reached the same conclusion. *See*, *e.g.*, *Greiff v. Life Ins. Co. of N. Am.*, 386 F. Supp. 3d 1111 (D. Ariz. 2019) (describing test in objective terms); *In re Out-of-Network Substance Use Disorder Claims Against UnitedHealthcare*, No. 19-cv-2075-JVS, 2023 WL 2808747, at *22 (C.D. Cal. Jan. 13, 2023) (same); *Adan v. Kaiser Found. Health Plan, Inc.*, No. 17-CV-01076-HSG, 2018 WL 1174559, at *5 (N.D. Cal. Mar. 6, 2018) (same); *but see Women's Recovery Ctr., LLC v. Anthem Blue Cross Life & Health Ins. Co.*, No.

7

1    20-cv-102-JWH, 2022 WL 757315, at *4 (C.D. Cal. Feb. 2, 2022) (quoting a subjective portion of

2    *Spinedex* without deciding the exhaustion question).

### 2. *Wit v. United Behavioral Health*

The Ninth Circuit recently confirmed the plan's language controls whether exhaustion is required. *See Wit v. United Behavioral Health*, 58 F.4th 1080 (9th Cir. 2023). *Wit* is largely a mirror image of *Spindex*. In *Wit*, the relevant plan stated: "You cannot bring any legal action against us to recover reimbursement until you have completed all the steps [described in the plan]." *Id.* at 1091. After the district court excused exhaustion on futility grounds, the Ninth Circuit reversed that decision. *Id.* at 1091. The court first declared:

> The Supreme Court has explained that "[t]he plan, in short, is at the center of ERISA," and accordingly, "[t]his focus on the written terms of the plan is the linchpin of 'a system that is [not] so complex that administrative costs, or litigation expenses, unduly discourage employers from offering [ERISA] plans in the first place.'" While Congress, in enacting ERISA, "empowered the courts to develop, in . . . light of reason and experience, a body of federal common law governing employee benefit plans," federal common law doctrines cannot alter or override clear and unambiguous plan terms.

*Id.* at 1098 (cleaned up). Accordingly, the court held:

> [w]hen an ERISA plan does not merely provide for administrative review but, as here, explicitly mandates exhaustion of such procedures before bringing suit in federal court and, importantly, provides no exceptions, application of judicially created exhaustion exceptions would conflict with the written terms of the plan.

*Id.* at 1098. Thus, *Wit* held prudential exhaustion and its exceptions are not relevant when "clear and unambiguous plan terms" create a "contractual exhaustion requirement." *Id.* This holding is consistent with *Spinedex*'s command that "a claimant need not exhaust when the plan does not require it." *Spinedex*, 770 F.3d at 1299. In both cases, the plan's plain language controls.

\* \* \*

In sum, "a claimant need not exhaust when the plan does not require it." *Id.* But if a plan makes exhaustion mandatory, exhaustion is mandatory.[4] *Wit*, 58 F.4th at 1098.

---

[4] As Defendants noted at oral argument, *Wit* discusses prudential exhaustion (and its exceptions) as good law before holding a claimant *must* exhaust if the plan requires it. *Id.* at 1097-98. But *Wit* does not cite *Spinedex*'s holding as to the inverse proposition: "a claimant need not exhaust when the plan does not require it." *Spinedex*, 770 F.3d at 1299. Since, under a plan's terms, it seems

8

### C. Application

The Court interprets ERISA plans "as would a person of average intelligence and experience." *Vaught*, 546 F.3d at 628. The plain language of Pacific States' plan could reasonably be read as making exhaustion optional prior to an ERISA suit. The plan states: "**Appeal of Adverse Benefit Determinations**: If a claim is wholly or partially denied, the claimant will have up to 180 days to make an appeal." (Dkt. No. 27-1 at 522.) During an appeal, the plan requires Guardian provide claimants "the opportunity" to submit evidence, view Guardian's claim records, and receive a review based on that record. (*Id.*) And, if Guardian denies an appeal, the plan requires Guardian provide the claimant: "a statement describing the claimant's right to bring a civil suit under Section 502(a) of the Employee Retirement Income Security Act of 1974" including "any applicable contractual limitations period that applies the claimant's right to bring such an action." (*Id.* at 523.)

This language does not *require* exhaustion. The *Wit* plan required exhaustion prior to filing a suit in court. *Wit*, 58 F.4th at 1091. This plan, in contrast, requires an appeal be filed within 180 days. (*Id.* at 522.) But it does not require an appeal. (*Id.*) The language implies "that a claimant waives her right to an administrative appeal of a claim denial if she does not file a written request for appeal within the specified timeframe. However, nothing in this language would alert a reasonable claimant that waiving the claimant's right to an administrative appeal will preclude the claimant from bringing a civil action under Section 502(a) of ERISA." *Greiff v. Life Ins. Co. of N. Am.*, 386 F. Supp. 3d 1111, 1114–15 (D. Ariz. 2019). Telling a claimant about a

---

exhaustion is either reasonably read as mandatory or optional, it is not clear how a court could ever reach the prudential exhaustion requirement (or the exceptions thereupon). In other words, it seems either: (1) a plan makes exhaustion optional and *Spinedex* means exhaustion is optional; or (2) a plan makes exhaustion mandatory and *Wit* means exhaustion is mandatory. Thus, applying *Spinedex* and *Wit* faithfully, as this Court must, contractual interpretation may have displaced prudential exhaustion and its exceptions.

Defendants object this displacement is contrary to *Wit*'s recognition of prudential exhaustion. The Court disagrees. *Wit* did not overrule *Spinedex*. Rather, the *Wit* court had no reason to consider the non-mandatory counterfactual because the plan there made exhaustion mandatory. *Wit*, 58 F.4th at 1091. *Spinedex* and *Wit* are binding precedents with consistent instructions to examine and follow the plan language regarding exhaustion. The Court merely applies each case to the facts here.

1   right to an appeal is "not the same as telling a claimant she must appeal or she loses her right to

2   challenge the decision in court." *Laura B. v. United Health Grp. Co.*, No. 16-cv-01639-JSC, 2017

3   WL 3670782, at *6 (N.D. Cal. Aug. 25, 2017); *see also Gallegos v. Mount Sinai Med. Ctr.*, 210

4   F.3d 803, 810 (7th Cir. 2000) (discussing the absence of penalty language in plan documents as

5   implying voluntary exhaustion).

6   Moreover, the "Alternative Dispute Resolution" section tells claimants the appeal process

7   is a "voluntary resolution dispute resolution option." (Dkt. No. 27-1 at 524.) Immediately after

8   discussing the appeal process, the plan states:

> **Alternative Dispute Options:** The claimant and the plan may have *other voluntary alternative dispute resolution options*, such as mediation. One way to find out what may be available is to contact the local U.S Department of Labor Office and the State insurance regulatory agency.
>
> *In addition to any legal rights you may have under section 502(a)*, if you believe that we have violated ERISAs procedural requirements, you may request that we review any claimed violation(s) and we will respond to you within ten days.

15  (*Id.* (emphasis added).) "Other" means in addition to that just described above; in other words, the

16  appeal is a voluntary alternative dispute resolution option and mediation is another such option.

17  Similarly, the phrase "[i]n addition to any legal rights you may have under section 502(a)"

18  suggests ERISA rights exist outside this appeal process. (*Id.*); *see also Barnes v. Indep. Auto.*

19  *Dealers Ass'n of Cal. Health & Welfare Benefit Plan*, 64 F.3d 1389, 1393 (9th Cir. 1995)

20  (requiring courts "construe ambiguities in an ERISA plan against the drafter and in favor of the

21  insured.") Thus, a reasonable reader not only could, but would understand an ERISA suit as an

22  "in addition to" or "alternative" to the appeal process, rather than a prerequisite.

23  Defendants' contrary arguments are unpersuasive. First, Defendants note that after

24  describing the appellate process, the plan requires Guardian "[p]rovide a statement describing the

25  claimant's right to bring a civil suit under Section 502(a) of the Employee Retirement Income

26  Security Act of 1974." (*Id.* at 523; Dkt. No. 30 at 12.) But that requirement speaks to Guardian's

27  obligations, not Plaintiff's. "[T]he language indicates that a claimant has a right to bring a civil

28  action under ERISA § 502(a) if an administrative appeal is denied, but it does not specify that a

10

1  claimant does *not* have a right to bring a civil action under any other circumstances." *Greiff*, 386
2  F. Supp. 3d at 1114; *see, e.g., Wit*, 58 F.4th at 1091 ("You cannot bring any legal action against us
3  to recover reimbursement until you have completed all the steps [described in the plan].")
4  Defendants ask the Court to infer mandatory exhaustion from the "structure" of the appeals
5  section. (Dkt. No. 27 at 15-16.) But such inferences from ambiguity must be drawn against
6  drafting parties, not in their favor. *Barnes*, 64 F.3d at 1393.

7  Finally, to the extent Defendants rely on the February 2022 denial letter to establish
8  mandatory exhaustion, that argument also fails. (*See* Dkt. No. 27-1 at 646.) *Spinedex* requires the
9  Court to determine if "the plan" requires exhaustion. *Spinedex*, 770 F.3d at 1299. Defendants
10 give no explanation as to how a letter issued after a claim denial can modify the agreement in the
11 ERISA plan. (*See id.* at 33 ("The Policy and any riders or amendments hereto, and the
12 Application of the Participating Employer, a copy of which is attached hereto or endorsed hereon
13 and made a part hereof, constitute the entire contract between the parties"); 36 (defining contract);
14 157 (same).) Moreover, consideration of non-plan documents like the denial letter would re-open
15 the subjective inquiry *Spinedex* seeks to avoid. For example, Plaintiff's counsel declare they never
16 received the denial letter. (Dkt. Nos. 29-1; 29-2; 29-3.) Does that matter? Must a court conduct a
17 trial to determine if that representation is true? Such an inquiry would be contrary to the Supreme
18 Court's command that "the plan, in short, is at the center of ERISA" because "focus on the written
19 terms of the plan is the linchpin of a system that is not so complex that administrative costs, or
20 litigation expenses, unduly discourage employers from offering ERISA plans in the first place."
21 *Wit*, 58 F.4th at 1098 (quoting *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108
22 (2013) (cleaned up)). Put differently, if courts mandated exhaustion under these circumstances, it
23 would undermine the very benefits exhaustion purports to promote.

24 In sum, the Pacific States plan does not require exhaustion. "A claimant need not exhaust
25 when the plan does not require it." *Spinedex*, 770 F.3d at 1299. So, Defendants' motion for
26 summary judgment fails because pre-suit exhaustion was optional under the Pacific States plan.
27 //
28 //

**CONCLUSION**

For the reasons stated above, Defendants' motion for summary judgment is DENIED. The deadlines in the stipulated schedule at Dkt. No. 33 remain in place.

**IT IS SO ORDERED.**

This Order disposes of Dkt. No. 27.

Dated: April 13, 2023

JACQUELINE SCOTT CORLEY
United States District Judge